UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| M. SHAWN LAWLER et al.,<br><br>                  Plaintiff,<br>   v.<br><br>DAVID C. SMITH et al.,<br><br>                  Defendant. | CASE NO. 3:24-cv-05985-DGE<br><br>ORDER GRANTING IN PART MOTION TO DISMISS |

## I    INTRODUCTION

Before the Court is Defendants' Motion to Dismiss and Compel Arbitration as to Counts 2–5 of Plaintiffs' Complaint. (Dkt. No. 22.) This dispute arises from a series of agreements dividing the Parties' interests in two ventures they previously owned together: Drivingplates.com, LLC and Third Law Productions, LLC. The Parties first entered into a Settlement Agreement, which requires arbitration, and then a Patent License Agreement and a Mutual Use Agreement, which both require judicial resolution in Washington. The Motion argues that Counts 2–5 should be dismissed because they are subject to the mandatory arbitration

ORDER GRANTING IN PART MOTION TO DISMISS - 1

provision of the Settlement Agreement and/or because of the *res judicata* effect of a California state court judgment ordering arbitration as to those claims.  In the alternative, it argues that Defendants are not subject to personal jurisdiction in this Court as to those claims.  Plaintiffs respond that the claims instead fall under the Mutual Use Agreement and are properly before this Court.

The Court will GRANT the motion in part and DISMISS the complaint with leave to amend.  The Parties' agreements, taken as a whole, make clear that Plaintiffs can bring *some* claims in this Court, specifically those related to "marketing materials" as defined in the Mutual Use Agreement, and claims arising under the Patent License Agreement.  The California judgment is not *res judicata* as to every issue that could be raised here, as it analyzes "non-marketing materials" under the Settlement Agreement and did not interpret the Mutual Use Agreement.  However, Plaintiffs' complaint, as currently pled, is far too similar to the one adjudicated in California.  Plaintiffs use the magic words "marketing materials" in their complaint here, which on the surface would place it within the ambit of the Mutual Use Agreement, but a closer read reveals that the substance of the complaint bears no relation to the property defined as "marketing materials" in the Agreement.  The factual allegations in the complaint are not specific to "marketing materials."  And Plaintiffs repeatedly allege that Defendants deprived them of "marketing materials trade secrets"—a capacious term with no connection to the Mutual Use Agreement.  Rather, the California court held that "trade secrets" are a type of intellectual property falling under the Settlement Agreement, and it does have *res judicata* effect as to that point.

For those reasons, the Court will dismiss the complaint, but give Plaintiffs an opportunity to amend and plead claims that meaningfully relate to "marketing materials."  Therefore, there is

1  no present basis for the Court to enter an order compelling arbitration, so the motion is DENIED

2  as to that aspect.  Likewise, Defendants' jurisdictional objections are only raised in the

3  alternative and do not need to be addressed at this time.  It is clear from the face of the Mutual

4  Use and Patent License Agreements that Defendants have consented to jurisdiction in

5  Washington for claims falling under those agreements, and the Court is dismissing the existing

6  claims to the extent they raise issues outside the scope of those agreements.

7                                        **II      BACKGROUND**

8        Plaintiff M. Shawn Lawler is a citizen of Washington state and is currently the only

9  owner of Drivingplates.com, LLC ("Driving Plates" or "DP"), a Washington LLC.  (Dkt. No. 13

10  at 2.)  Defendant David C. Smith is a citizen of California, and Defendant Third Law

11  Productions, LLC ("TLP") (d/b/a "Plate Pros"), is a California LLC.  (*Id.* at 1–2.)  Formerly,

12  Smith and Lawler were 50/50 owners of the DP and TLP LLCs.  (Dkt. Nos. 22 at 5; 13 at 3.)

13  Driving Plates is "likely the world's leading source for high-quality, 360-degree motion

14  environments and stock driving footage from around the globe."  (Dkt. No. 13 at 3.)  Driving

15  Plates also owns a patented camera array (U.S. patent 8,811,812).  (*Id.*)  At some point, "the

16  relationship between Lawler and Smith grew fractured, [and] they ultimately decided to stop

17  doing business together."  (*Id.* at 4.)

18        On December 24, 2021, Lawler and Smith entered into a Settlement Agreement, in which

19  Lawler purchased Smith's 50% interest in DP and an itemized list of DP's physical assets and

20  intellectual property, in exchange for $1.55 million and Lawler's 50% interest in TLP.  (*Id.*)  The

21  itemized list includes computer software, website domains, cameras and equipment, and similar

22  items.  (*See* Dkt. No. 23 at 10–12.)  On March 24, 2022, DP and TLP entered into a Mutual Use

23  Agreement that allowed TLP "the right to use Driving Plates' marketing materials in perpetuity

24

1  until terminated as specified in the agreement," and a Patent License Agreement "which
2  permitted Third Law Productions, LLC the right to use Driving Plates' patents camera rig system
3  in perpetuity until terminated as specified in the agreement." (Dkt. No. 13 at 4.) The Mutual
4  Use Agreement defines "marketing materials" to mean "Licensor's demo reels and other
5  marketing materials that depict or reflect work invoiced to a customer by Licensor on or before
6  December 31, 2021." (Dkt. No. 23 at 30.) On July 27, 2022, TLP converted from a Washington
7  LLC to a California LLC, via filing with the California Secretary of State. (Dkt. Nos. 22 at 8; 23
8  at 39.) TLP dissolved as a Washington LLC as of August 22, 2022. (Dkt. No. 23 at 41.)

9        Confusingly, the Settlement Agreement, the Patent License Agreement, and the Mutual
10 Use Agreement each have different mechanisms for dispute resolution. The Settlement
11 Agreement states that "[i]n the event a dispute arises among the Parties concerning this
12 Settlement Agreement, the terms of the membership/share transfers or assignments, or the terms
13 of the licensing agreement, such dispute shall be resolved by expedited arbitration before the
14 Hon. John Erlick (ret.) as arbitrator." (Dkt. No. 23 at 15.) The Patent License agreement states
15 that disputes "shall be finally resolved in the applicable state or federal courts located in Seattle,
16 Washington, U.S.A.," and that the Parties "consent to the exclusive jurisdiction of such
17 courts . . . and waive any jurisdictional or venue defenses otherwise available." (*Id.* at 23.) The
18 Mutual Use Agreement states that "[e]xclusive jurisdiction for litigation of any dispute,
19 controversy or claim arising out of or in connection with this Agreement, or breach thereof shall
20 be only in the Federal or State court with competent jurisdiction located in King County,
21 Washington." (*Id.* at 32.)

22       These contrasting venue provisions have resulted in piecemeal litigation and disputes
23 across multiple fora. On February 9, 2024, the same Plaintiffs as in this action filed a complaint
24

ORDER GRANTING IN PART MOTION TO DISMISS - 4

1  in California Superior Court, Los Angeles County, against the same Defendants (and additional
2  Doe defendants).  (Dkt. No. 24 at 6.)  The initial California complaint alleged six counts,
3  including: 1) fraudulent inducement, 2) breach of fiduciary duty, 3) declaratory relief, 4) unfair
4  business practices (Cal. Bus. & Prof. Code §§ 17200 et seq), 5) conversion, and 6) civil theft
5  (Cal. Penal Code § 496(c)).  (*Id.*)  On June 10, 2024, Plaintiffs filed an amended complaint in
6  California with thirteen causes of action, some of which were denoted as "non-marketing
7  materials" and others denoted as "marketing materials."  (*See* Dkt. No. 24 at 20–21, 36.)  After
8  Defendants moved to compel arbitration in that case, Plaintiffs voluntarily dismissed counts six
9  through thirteen, encompassing those counts denoted as marketing materials.  (*See id.* at 20–21,
10 40).[1]  The remaining counts were: 1) unfair competition, 2) misappropriation of trade secrets, 3)
11 conversion, 4) civil theft, and 5) trade libel—the first four of which were denoted as non-
12 marketing materials.  (*See id.*)  On October 30, 2024, the California Superior Court (Tamzarian,
13 J.) held that the remaining counts fell under the terms of the Settlement Agreement and entered
14 an order compelling arbitration.  (*Id.* at 41–44, 46.)  As to the first four counts, the court
15 discussed the non-marketing materials in dispute, including intellectual property, business plans,
16 and customer lists, and found that those fell within the scope of the Settlement Agreement and its
17 arbitration clause.  (*See id.* at 42–43.)  The court likewise found that the trade libel count fell
18 within the scope of the Settlement Agreement.  (*See id.* at 43–44.)

19      On November 27, 2024, Plaintiffs initiated litigation in this Court.  Their amended
20 complaint includes six counts.  Count 1 seeks declaratory relief, while Counts 2–5 allege: unfair
21 business practices (Cal. Bus. & Prof. Code §§ 17200 et seq), misappropriation of trade secrets,

---

[1] Counts 11 and 12 were related to a venture called CarStage, which is not mentioned in the complaint in this action.

ORDER GRANTING IN PART MOTION TO DISMISS - 5

1  conversion, and civil theft. (Dkt. No. 13 at 6–10.) Each of Counts 2 through 5 make reference to
2  "marketing materials" in some form, e.g. Counts 2 and 3 allege that Defendants "acquired,
3  disclosed, and/or used the foregoing marketing material trade secrets through improper means,"
4  and Count 5 alleges that "Defendants, and each of them, obtained Plaintiffs' marketing materials
5  in a manner that constitutes theft." (*See id.*)

### III     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547. "The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit . . . . Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

ORDER GRANTING IN PART MOTION TO DISMISS - 6

1  IV   DISCUSSION

2  **A. Issue Preclusion Does Not Prevent Adjudication of Claims Arising Under the**

3  **Mutual Use or Patent License Agreements, but Plaintiffs' Complaint Raises**

4  **Issues Outside the Scope of Those Agreements and are Partially Precluded.**

5      The Court begins by analyzing whether the California action has *res judicata* effect on

6  this litigation. The doctrine of "*[r]es judicata* encompasses two subsidiary doctrines, claim

7  preclusion and issue preclusion." *Americana Fabrics, Inc. v. L & L Textiles, Inc.*, 754 F.2d

8  1524, 1529 (9th Cir. 1985). "Claim preclusion 'prevents litigation of all grounds for, or defenses

9  to, recovery that were previously available to the parties, regardless of whether they were

10 asserted or determined in the prior proceeding.'" *Id.* (quoting *Brown v. Felsen,* 442 U.S. 127,

11 131 (1972)). Issue preclusion, also known as collateral estoppel, "bars relitigation, even in an

12 action on a different claim, of all 'issues of fact or law that were actually litigated and necessarily

13 decided' in the prior proceeding." *Id.* (quoting *Segal v. American Tel. & Tel. Co.,* 606 F.2d 842,

14 845 (9th Cir.1979)). Here, Defendants do not expressly specify whether they are asserting claim

15 or issue preclusion, but they insist that "the California Court already determined that Claims 1 –

16 4 in the California Action, which are substantively the same as Claims 2 – 5 in the Amended

17 Complaint, must be arbitrated" (Dkt. No. 22 at 13)—seemingly invoking issue preclusion as to

18 claims that were "actually litigated and necessarily decided" in the prior action.

19      There is also the issue of which jurisdiction's law applies in the issue preclusion analysis

20 (which neither party briefed). "A federal court applying issue preclusion 'must give state court

21 judgments the preclusive effect that those judgments would enjoy under the law of the state in

22 which the judgment was rendered.'" *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018)

23 (quoting *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001)). *See also Priest v.*

24

*Am. Smelting & Ref. Co.*, 409 F.2d 1229, 1231 (9th Cir. 1969) (applying law of forum state, Washington, as to collateral estoppel for claim arising under Montana law). And since this Court is sitting in diversity jurisdiction, there is no federal common law to apply. *Priest*, 409 F.2d at 1231 (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Here, even though the California court applied Washington law to interpret the scope of the Settlement Agreement and its arbitration clause (*see* Dkt. No. 24 at 41), the question here is the preclusive effect of a California state court judgment, so the Court will apply California law to answer that question.

Under California law, "issue preclusion applies: (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." *DKN Holdings LLC v. Faerber*, 352 P.3d 378, 387 (Cal. 2015). "The 'identical issue' requirement addresses whether 'identical factual allegations' are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same." *Hardwick v. Cnty. of Orange*, 980 F.3d 733, 740 (9th Cir. 2020) (quoting *Lucido v. Superior Court*, 795 P.2d 1223, 1225 (Cal. 1990)). "The party asserting collateral estoppel bears the burden of establishing these requirements." *Lucido*, 795 P.2d at 1225.

Here, at least two of the four requirements are easily satisfied. The Court finds that the "final judgment" requirement is satisfied, even though formally the California court only stayed proceedings pending arbitration (*see* Dkt. No. 24 at 46), because "an order compelling arbitration is 'sufficiently firm to be accorded conclusive effect' and is entitled to full faith and credit" under California law. *Se. Res. Recovery Facility Auth. v. Montenay Int'l Corp.*, 973 F.2d 711, 713 (9th Cir. 1992) (quoting *Sandoval v. Superior Court,* 140 Cal.App.3d 932, 936 (1983)).

Likewise, there is no question as to the identity of parties; Plaintiffs and Defendants were the same in both actions.

Thus, the Court focuses its analysis here on the "identical issue" and "actually adjudicated" requirements. As to "identical issue," the Court starts with a comparison of the factual allegations in the California first amended complaint, and the amended complaint in this case. The Court finds that the former encompasses the latter, and they are identical as to the most relevant aspects. The California complaint is longer and includes facts not presented here, but as to the gravamen of the complaint, both allege verbatim that "Smith accessed the Driving Plates website and Google drive, obtaining considerable sales and other Driving Plates confidential and/or trade secret information, including marketing materials, business plans, customer lists, contact information, and designs and methods of doing business unique to Driving Plates." (*Compare* Dkt. No. 24 at 26 *with* Dkt. No. 13 at 5.) By choosing to copy/paste from the facts section of the California first amended complaint, which concerned both non-marketing materials and marketing materials, into the complaint here, Plaintiffs incorporated both issues into the allegations. In other words, Plaintiffs allege in this case that Defendants misappropriated not only "marketing materials" but also "business plans, customer lists, contact information" and the like, the latter of which is identical to what the California court held to be intellectual property falling under the Settlement agreement. (Dkt. No. 24 at 42.)

Next, the Court turns to what was "actually adjudicated" in the California action. As discussed *supra*, Plaintiffs in California voluntarily dismissed counts related to marketing materials, and so the court only analyzed the non-marketing material counts and did not expressly discuss the Mutual Use Agreement. (*See* Dkt. No. 24 at 41–44.) Thus, the Court finds that the California order does not have *res judicata* effect as to "marketing materials" or prevent

litigation here of claims properly falling under the Mutual Use Agreement. But that does not end the analysis, because there remains the question of what is a "marketing material" versus a "non-marketing material," and which properties fall under what agreements, and the California court did actually adjudicate some portions of that dispute. Discussing Counts 1–4, the court held that they concerned "intellectual property," which falls under the Settlement Agreement. (Dkt. No. 24 at 42.) Specifically, Count 2 alleged that Defendants "misappropriated 'trade secrets' that consist of the same 'non-marketing items'" and the court held that "[w]ith respect to the second cause of action, intellectual property generally includes trade secrets," and therefore was subject to arbitration under the Settlement Agreement. (*See id.*, quoting Black's Law Dictionary definition of "intellectual property": "The category comprises primarily trademark, copyright, and patent rights, but also includes trade-secret rights…").

      Here, Plaintiffs attempted to distinguish their complaint from the California complaint by framing each of the counts in terms of "marketing materials," but they muddied the waters by pleading misappropriation of "marketing materials trade secrets"—not anything meaningfully tethered to the Mutual Use Agreement. For instance, Count 1 of the California complaint alleges that Defendants engaged in unfair business practices (in violation of Cal. Bus. & Prof. Code §§ 17200 et seq) "by using Driving Plates' non-marketing materials, inclusive of its business plans, customer lists, curated contact information, and designs and methods of doing business unique to Driving Plates in conducting the business of Defendant Plate Pros" whereas Count 2 of the amended complaint here alleges that Defendants violated the same code section by "us[ing] the foregoing marketing material trade secrets through improper means, including use of these marketing materials after any right to use them ended and/or without ever having the right to use

those trade secrets." (*Compare* Dkt. No. 24 at 26–27 *with* Dkt. No. 13 at 7.)[2]  There are at least two problems with that formulation.  One, as discussed *supra*, the California court already held that "trade secrets" are a kind of intellectual property falling within the Settlement Agreement.  (Dkt. No. 24 at 42.)  Two, the concept that there could be a "marketing materials trade secret" as opposed to a "non-marketing materials trade secret" falls flat when one considers what the Mutual Use Agreement actually defines as "marketing materials": "Licensor's demo reels and other marketing materials that depict or reflect work invoiced to a customer by Licensor on or before December 31, 2021."  (Dkt. No. 23 at 30.)  As Defendants point out, these "marketing materials" as defined by the Agreement are produced to customers and are publicly available, so they cannot be "trade secrets."  (Dkt. No. 28 at 5–6 & n.1.)

       The upshot is this: Plaintiffs can bring *some* claims in this Court—those that properly fall within the Mutual Use Agreement and/or the Patent License Agreement.  And they have attempted to do so, by making reference in their complaint to "marketing materials," which is the subject of the Mutual Use Agreement.  But their complaint is otherwise largely a rehash of what they filed in California, and it muddles several issues together, ultimately exceeding the scope of "marketing materials" as defined in the Agreement.  The Court will give Plaintiffs leave to reformulate their complaint, but for their next complaint to pass muster, they will need to plead facts that are specific to things covered in the Mutual Use/Patent License Agreements (e.g., as to the former, "Licensor's demo reels and other marketing materials that depict or reflect work invoiced to a customer by Licensor on or before December 31, 2021"), and they will need to more meaningfully tailor their claims as to those issues.

---

[2] Defendants produced a chart with a side-by-side comparison of the counts that recur in both the California First Amended Complaint and the Amended Complaint here, which was helpful for the Court's review.  (Dkt. No. 24 at 49–51.)

Therefore, the motion to dismiss is GRANTED, with leave to amend.  Because the Court is allowing Plaintiffs to reformulate their complaint to reach only issues *not* subject to arbitration, the need for an order compelling arbitration is obviated at present, so that aspect of Defendants' motion is DENIED.

### B. The Court Does Not Reach Defendants' Partial, Alternative Jurisdictional Defense

Defendants raise an alternative argument that if the Court does not dismiss Counts 2–5 for the reasons discussed *supra*, they should be dismissed under Rule 12(b)(2) or 12(c) due to lack of personal jurisdiction.  (Dkt. No. 22 at 15.)  Defendants do not object to jurisdiction as to Count 1.  (*See id.*)  They state: "The only alleged basis for Plaintiffs' assertion of personal jurisdiction is the forum selection clauses in the Mutual Use Agreement and the Patent License Agreement. . . . But the only cause of action in the Amended Complaint that arises out of these subsidiary agreements is Plaintiffs' Claim 1 for declaratory judgment."  (*Id.* at 17.)  As to Counts 2–5, they state: "these claims are subject to the parties' agreement to arbitrate in the Settlement Agreement and Defendants have not consented to this Court's jurisdiction for these claims."  (*Id.*)

Thus, Defendants do not argue that this Court lacks jurisdiction over them for claims properly raised under the Mutual Use or Patent License Agreements, nor could they in light of the forum selection clauses.  Because of the Court's holding *supra* at Section IV(A), there is no need to analyze whether Defendants can be haled into court in Washington for claims falling outside the scope of those two agreements.[3]

---

[3] The Court notes that the Mutual Use and Patent License Agreements call for adjudication in either Seattle or King County (Dkt. No. 23 at 23, 32), but this action was filed in the District's Tacoma division (which is neither in Seattle nor King County) (*See* Dkt. No. 1).  Defendants

## C. CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED with leave to amend, and the Motion to Compel is DENIED.

Dated this 10th day of July, 2025.

David G. Estudillo
United States District Judge

---

have not objected to venue in Tacoma, and venue may be waived as a defense if not raised in a motion to dismiss. *See* Fed. R. Civ. P. 12(b)(3), (h)(1); *see also Columbia Sportswear N. Am., Inc. v. Seirus Innovative Accessories, Inc.*, 265 F. Supp. 3d 1196, 1200 (D. Or. 2017). In any event, even if this case were re-filed in Seattle, it would almost certainly be re-assigned to the Undersigned as a related case.