UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| M. SHAWN LAWLER et al.,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>DAVID C. SMITH et al.,<br><br>　　　　　　Defendant. | CASE NO. 3:24-cv-05985-DGE<br><br>ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DKT. NOS. 37, 40) |

　　　　Before the Court are cross-motions (Dkt. Nos. 37, 40) for partial summary judgment. Both motions turn on the interpretation of a single word used in one of the agreements involving a company known as Third Law Production LLC, a Washington limited liability company (hereinafter, "TLP-WA").  Because the Court finds there are questions of fact surrounding the context in which the relevant agreements were executed, the Court DENIES both motions.

# I     BACKGROUND

**A. Factual Background**

The facts presented are largely undisputed. Plaintiff M. Shawn Lawler is currently the sole owner of Drivingplates.com, LLC ("DP"), a Washington limited liability company. (Dkt. No. 31 at 2.) Defendant David C. Smith is currently the sole owner of Third Law Production LLC, a California limited liability company (hereinafter, "TLP-CA"). (*Id.*) Formerly, Lawler and Smith were 50/50 owners of DP and TLP-WA. (Dkt. No. 41 at 2.) At some point, the relationship between Lawler and Smith grew fractured, and the two discontinued their business relationship. (Dkt. No. 31 at 4.)

On December 24, 2021, Lawler and Smith entered into a Settlement Agreement, in which Lawler became sole owner and member of DP, and Smith became sole owner and member of TLP-WA. (Dkt. No. 41 at 3.) On March 24, 2022, DP and TLP-WA entered into two subsidiary agreements, a Patent License Agreement, which permitted TLP-WA the right to use DP's patented camera rig system in perpetuity until terminated as specified in the agreement, and a Mutual Use Agreement, which allowed either company the right to use the other's marketing materials in perpetuity until terminated as specified in the agreement. (Dkt. Nos. 38-1, 38-2.)

The Patent License Agreement states it "shall be governed by and construed in accordance with the internal laws of the State of Washington exclusive of its conflicts of laws provisions." (Dkt. 38-1 at 5.) Similarly, the Mutual Use Agreement states it "shall be governed by and construed in accordance with the laws of the state of Washington, without regard to its principles of conflict of law, and irrespective of the fact that any one of the Parties is now or may become a resident of a different state or country." (Dkt. No. 38-2 at 4.)

Both contain provisions allowing for termination upon the occurrence of certain events. Pursuant to the Patent License Agreement, DP had the right to terminate the agreement by giving written notice to TLP-WA if, among other things, TLP-WA "is ***dissolved*** or liquidated or takes any action for such purpose" or if "the management, control, or ownership of Licensee undergoes a substantial change or is in any manner transferred, respectively." (Dkt. No. 38-1 at 3) (emphasis added). Likewise, the Mutual Use Agreement stated that DP had the right to terminate TLP-WA's right to use DP's marketing materials "(i) if Licensee sells or otherwise disposes of substantially all of its business or assets to a third party or parties; (ii) if management of Licensee undergoes a substantial change; or (iii) if control or ownership of Licensee is in any manner transferred." (Dkt. No. 38-2 at 3.)

On July 25, 2022, TLP-WA executed a Plan of Conversion (hereinafter, the "Plan") "for purposes of converting its existence from a Washington limited liability company . . . to a California limited liability company . . . pursuant to 26 U.S.C. § 368(a)(1)(F)." (Dkt. No. 41-1 at 31.) The Plan directed that TLP-WA "prepare and file a Certificate of Conversion with the appropriate filing office of its state of formation." (*Id*.) The Plan further required TLP-WA to file with California Department of State a "Certificate of Conversion" and a "Certificate of Organization for the Converted Entity." (*Id*.) The Plan was to "become effective upon the date of filing with the state of California." (*Id*.) The Plan acknowledged the conversion would allow TLP-WA to "continue its existence in the form of a California limited liability company known at [TLP-CA]." (*Id.*)

On July 27, 2022, TLP filed Articles of Organization with Statement of Conversation with the California Secretary of State. (*Id.* at 34.) However, on August 23, 2022, TLP filed a Certificate of Dissolution with the Washington Secretary of State, which stated the limited

liability company was dissolved pursuant to Washington Revised Code § 25.15.265.  (Dkt. No. 39-1 at 3.)  On August 24, 2022, TLP filed its Statement of Information with the California Secretary of State.  (Dkt. No. 41-1 at 48.)

In a letter dated March 24, 2023, DP notified Defendants that it believed TLP-WA had voluntarily dissolved on August 23, 2022, thereby triggering the termination provisions of the Patent License Agreement and Mutual Use Agreement.  (Dkt. No. 38-3 at 3–4.)

As a practical matter, there is no distinction between how Smith operated TLP-WA versus how Smith operates TLP-CA.  The "headquarters and primary physical location [has been] a bonus room in [Smith's] home, which is located" at the same California address.  (Dkt. No. 41 at 3.)  Smith has been "a long-time California resident and has never lived or worked in Washington."  (*Id*. at 3.)  Importantly, TLP-WA and TLP-CA:

> (i) [have] the same member [(Smith)], (ii) operate[]the same business, (iii) [have] the same Employer Identification Number (EIN), (iv) [have] the same physical location (and additional locations), (v) [have] the same insurer and consistent insurance policies, (vi) use[] the same bank and maintains the same bank accounts, and (vii) continue[] to work with some of the same clients.

(*Id*. at 5.)

**B.  Procedural Background**

On November 27, 2024, Plaintiffs initiated litigation in this Court.  (Dkt. No. 1.)  Their second amended complaint includes five causes of action: (1) declaratory judgment under 28 U.S.C. § 2201, (2) violation of California Business and Professional Code §§ 17200 *et seq.*, (3) breach of contract, (4) conversion, and (5) civil theft.  (Dkt. No. 31 at 5–9.)  On October 17, 2025, both Parties filed motions for partial summary judgment relating to Plaintiffs' first claim for relief for declaratory judgment.  (Dkt. Nos. 37, 40.)

ORDER DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DKT. NOS. 37, 40) - 4

Plaintiffs' motion for summary judgment argues TLP-WA "dissolved" such that Plaintiffs have properly invoked the termination provisions of both the Patent License Agreement and the Mutual Use Agreement. (Dkt. No. 37 at 7–10) (TLP-WA's "dissolution triggered [DP's] express termination rights as a matter of law"). Conversely, Defendants argue TLP-WA never "dissolved" and that TLP-WA continues as TLP-CA, which means TLP-CA may continue to enforce both agreements. (Dkt. No. 40 at 13–15.) Thus, both motions turn on whether TLP-WA "dissolved" as the word is used in paragraph 2.03.3 of the Patent License Agreement.

## II    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must construe the evidence in favor of the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). The moving party bears the initial burden of proof to demonstrate the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and can meet this burden by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case," *Fairbank*, 212 F.3d at 531 (cleaned up). The court's role at summary judgment "is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III    ANALYSIS

The Court is required to construe the terms of the Patent License Agreement and the Mutual Use Agreement "in accordance with the internal laws of the State of Washington." (Dkt.

No. 38-1 at 5; *see also* Dkt. No. 38-2 at 4.)  Accordingly, whether TLP-WA "dissolved" under the Patent License Agreement or whether it continues to exist, now under the name and structure known as TLP-CA, turns on the interpretation of the word "dissolved" as used in the Patent License Agreement.

Plaintiffs ask the Court to construe the word "dissolved" in the context of Washington's limited liability company statute, Chapter § 25.15 of Washington's Revised Code.  (Dkt. No. 37 at 2) (TLP-WA "was dissolved under . . . [Washington Revised Code] § 25.15.265").

First, the undisputed facts establish that TLP-WA did not make the necessary filings to convert TLP-WA into TLP-CA under Washington's limited liability company statute.  Washington Revised Code § 25.15.446(1)(a) unambiguously identifies that a converting limited liability company "must deliver to the secretary of state for filing articles of conversion."  The filed articles of conversion must, among other things, identify the address to be used for service of process if the "converted organization is a foreign organization not registered to transact business in this state."  Wash. Rev. Code § 25.15.446(1)(a)(vi).  The filed articles of conversion also "must be executed by at least one . . . member" of the limited liability company.  Wash. Rev. Code § 25.15.086(9).  "An organization that has been converted pursuant to [Chapter § 25.15] is for all purposes the same entity that existed before the conversion."  Wash. Rev. Code § 25.15.451(1).  Absent from the record is any evidence that TLP-WA complied with the above statutory requirements allowing it to convert into TLP-CA under Washington's limited liability company statute.

Second, TLP-WA filed a Certificate of Dissolution pursuant to Washington Revised Code § 25.15.265.  (Dkt. No. 41-1 at 45.)  In Washington, a certificate of dissolution dissolves a limited liability company.  *See* Wash. Rev. Code §§ 25.15.265, 25.15.269.

Thus, if the word "dissolved" in the Patent License Agreement is interpreted to mean a dissolution under Washington's limited liability company statute, then Plaintiffs would prevail.

Defendants ask for a more liberal interpretation of the word "dissolved" in the Patent License Agreement.  From Defendants' perspective, Plaintiffs' "argument fails because there is no dissolution of TLP[-WA], nor was there a change in management, control, or ownership. Rather, TLP[-WA] converted to a California entity and continued its operations in California with the same name, the same business, and no change in management or control." (Dkt. No. 42 at 6.)

In Washington, when interpreting a contract, courts determine the parties' intent by applying the context rule.  *Fedway Marketplace W., LLC v. State*, 336 P.3d 615, 620–621 (Wash. Ct. App. 2014) (internal citations and quotations omitted).  The context rule

> allows a court, when viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations.  The rule applies even when the disputed provision is unambiguous.

*Id.*; *Pelly v. Panasyuk*, 413 P.3d 619, 629 (Wash. Ct. App. 2018) ("Under the context rule, extrinsic evidence is admissible to ascertain the intent of the parties in entering into a contract and the meaning of the words used in the instrument.").

In interpreting the word "dissolved" as used in the Patent License Agreement, context matters.  There is a question of fact as to whether the parties agreed that the word "dissolved" was to mean a dissolution under Washington's limited liability company statute or whether it was to mean something more than a statutory dissolution.  The remainder of Section 2.03.3 in the Patent License Agreement seems to suggest circumstances involving TLP-WA's inability to pay its debts or instances where creditors threatened its ability to continue operating.  (*See* Dkt. No.

1  38-1 at 3.)[1]  This additional language may indicate "dissolved" was intended to mean a forced

2  dissolution due to insolvency.  Similarly, Section 2.03.4 discusses instances where "the

3  management, control, or ownership of Licensee undergoes substantial change or is any manner

4  transferred." (*Id.*)[2]  This language could suggest that something more than just a change in the

5  state of incorporation is necessary to establish dissolution where there has not been any

6  substantial change in assets or operations between TLP-WA and TLP-CA.

7    In short, the record is not complete for the Court to determine the entire context of the

8  Patent License Agreement and whether "dissolved" should be construed in terms of dissolution

9  under Washington's limited liability company statute or construed more liberally.  Neither party

10  presents any declarations or argument identifying their intent in using the word "dissolved" in

11  Section 2.03.3 of the Patent License Agreement or why the word "dissolved" should or should

12  not mean a dissolution under Washington's limited liability company statute given the context in

13  which the word is used relative to the entire agreement.

---

[1] Section 2.03.3 states in full:

> Licensee: (i) is dissolved or liquidated or takes any action for such purpose; (ii) becomes insolvent or is generally unable to pay, or fails to pay, its debts as they become due; (iii) files or has filed against it a petition for voluntary or involuntary bankruptcy or otherwise becomes subject, voluntarily or involuntarily, to any proceeding under any domestic or foreign bankruptcy or insolvency law; (iv) makes or seeks to make a general assignment for the benefit of creditors; or (v) applies for or has a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business.

(Dkt. No. 38-1 at 3.)

[2] Similar language is found in Section 4 of the Mutual Use Agreement which allows termination in circumstances where the Licensee "sells or otherwise disposes of substantially all of its business or assets to a third party," management "undergoes a substantial change," or "control of ownership of the Licensee is in any manner transferred."  (Dkt. No. 38-2 at 3.)

## IV    CONCLUSION

Accordingly, and having considered both parties' motions for summary judgment, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that both motions (Dkt. Nos. 37, 40) are DENIED.

Dated this 7th day of January, 2026.

David G. Estudillo
United States District Judge