UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

M. SHAWN LAWLER et al.,

Plaintiffs,

v.

DAVID C. SMITH et al.,

Defendants.

CASE NO. 3:24-cv-05985-DGE

ORDER ON RENEWED CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT (DKT. NOS. 52, 55)

Before the Court are renewed cross-motions for partial summary judgment. (Dkt. Nos. 52, 55.) The Court previously concluded that, based on the incomplete record before it, there remained a question of fact as to whether the Parties intended the word "dissolved" as used in the Parties' contract was to mean a dissolution under Washington's limited liability company statute or something else. (*See* Dkt. No. 47 at 7–8.) The Parties renewed their motions for partial summary judgment. (Dkt. Nos. 52 at 3; 55 at 10.) Having reviewed the renewed motions, and the relevant background, the Court GRANTS Defendants' motion for partial summary judgment (Dkt. No. 55) and DENIES Plaintiffs' motion (Dkt. No. 52).

# I BACKGROUND

## A. Background Facts

The Court adopts the background facts from its previous order denying cross-motions for partial summary judgment. (Dkt. No. 47.) The Parties' motions for partial summary judgment deal with the two agreements the Parties entered into following a Settlement Agreement which awarded Plaintiff M. Shawn Lawler sole ownership of Drivingplates.com, LLC ("DP"), a Washington limited liability company, and awarded Defendant David C. Smith sole ownership of Third Law Production, LLC, a Washington limited liability company (hereinafter, "TLP-WA").

On March 24, 2022, DP and TLP-WA entered into two subsidiary agreements, a Patent License Agreement, which permitted TLP-WA the right to use DP's patented camera rig system in perpetuity until terminated as specified in the agreement, and a Mutual Use Agreement, which allowed either company the right to use the other's marketing materials in perpetuity until terminated as specified in the agreement. (Dkt. No. 47 at 2.) Both the Patent License Agreement and the Mutual Use Agreement are governed by Washington law. (Dkt. No. 53 at 5, 8, 15, 17.) Both Agreements contain provisions allowing for termination upon the occurrence of certain events. Pursuant to the Patent License Agreement, DP had the right to terminate the agreement by giving written notice to TLP-WA if, among other things, TLP-WA

> (i) is dissolved or liquidated or takes any action for such purpose; (ii) becomes insolvent or is generally unable to pay, or fails to pay, its debts as they become due; (iii) files or has filed against it a petition for voluntary or involuntary bankruptcy or otherwise becomes subject, voluntarily or involuntarily, to any proceeding under any domestic or foreign bankruptcy or insolvency law; (iv) makes or seeks to make a general assignment for the benefit of the creditors; or (v) applies for or has a receiver, trustee, custodian, or similar agent appointed by order of any court of competent jurisdiction to take charge of or sell any material portion of its property or business; or

> 2.03.4. If the management, control, or ownership of Licensee undergoes a substantial change or is in any manner transferred, respectively.

(Dkt. No. 53 at 6.)

Likewise, the Mutual Use Agreement stated that DP had the right to terminate TLP-WA's right to use DP's marketing materials upon prior written notice "(i) if Licensee sells or otherwise disposes of substantially all of its business or assets to a third party or parties; (ii) if management of Licensee undergoes a substantial change; or (iii) if control or ownership of Licensee is in any manner transferred." (Dkt. No. 53 at 16.)

Lawler attested that "the parties never discussed the language of the termination provisions in the Agreements in the process of exchanging drafts and proposed revisions prior to finalizing and signing them." (*Id.* at 2.) Stephen Willey, counsel for Defendants, attested that the termination language in the Agreements remained the same throughout the revision process and "[t]here was no discussion between counsel regarding the termination provisions in these agreements, including no discussion regarding the meaning of "dissolved" as that word appears in Section 2.03.3(i) of the Patent License Agreement." (Dkt. No. 49 at 3.)

Smith, a long-time California resident, decided to convert TLP-WA from a Washington limited liability company to a California limited liability company (hereinafter, "TLP-CA"). (Dkt. No. 41 at 3–4.) On July 25, 2022, TLP-WA executed a Plan of Conversion (hereinafter, the "Plan") "for purposes of converting its existence from a Washington limited liability company . . . to a California limited liability company . . . pursuant to 26 U.S.C. § 368(a)(1)(F)." (Dkt. No. 41-1 at 31.) The Plan directed that TLP-WA "prepare and file a Certificate of Conversion with the appropriate filing office of its state of formation." (*Id.*) The Plan further required TLP-WA to file with the California Department of State a "Certificate of Conversion" and a "Certificate of Organization for the Converted Entity." (*Id.*) The Plan was to "become

effective upon the date of filing with the state of California." (*Id.*) The Plan acknowledged the conversion would allow TLP-WA to "continue its existence in the form of a California limited liability company known at [TLP-CA]." (*Id.*)

On July 27, 2022, TLP-WA filed Articles of Organization with Statement of Conversation with the California Secretary of State. (*Id.* at 34.) However, on August 23, 2022, TLP-WA filed a Certificate of Dissolution with the Washington Secretary of State, which stated the limited liability company was dissolved pursuant to Washington Revised Code § 25.15.265. (*Id.* at 45.) On August 24, 2022, TLP-CA filed its Statement of Information with the California Secretary of State. (*Id.* at 48–49.)

As a practical matter, there is no distinction between how Smith operated TLP-WA versus how Smith operates TLP-CA. The "headquarters and primary physical location [has been] a bonus room in [Smith's] home, which is located" at the same California address. (Dkt. No. 41 at 3.) Smith has been "a long-time California resident and has never lived or worked in Washington." (*Id.*) Importantly, TLP-WA and TLP-CA:

> (i) [have] the same member [(Smith)], (ii) operate[]the same business, (iii) [have] the same Employer Identification Number (EIN), (iv) [have] the same physical location (and additional locations), (v) [have] the same insurer and consistent insurance policies, (vi) use[] the same bank and maintains the same bank accounts, and (vii) continue[] to work with some of the same clients.

(*Id*. at 5.)

In a letter dated March 24, 2023, DP notified Defendants that it believed TLP-WA had voluntarily dissolved on August 23, 2022, thereby triggering the termination provisions of the Patent License Agreement and Mutual Use Agreement. (Dkt. No. 38-3 at 3–4.)

**B. Procedural Background**

On November 27, 2024, Plaintiffs initiated litigation in this Court. (Dkt. No. 1.) Their second amended complaint includes five causes of action: (1) declaratory judgment under 28 U.S.C. § 2201, (2) violation of California Business and Professional Code §§ 17200 *et seq.*, (3) breach of contract, (4) conversion, and (5) civil theft. (Dkt. No. 31at 5–9.) On October 17, 2025, both Parties filed motions for partial summary judgment on Plaintiffs' first claim for relief for declaratory judgment. (Dkt. Nos. 37, 40.)

On January 7, 2026, the Court denied the Parties' cross-motions for summary judgment, concluding "the record is not complete for the Court to determine the entire context of the Patent License Agreement and whether 'dissolved' should be construed in terms of dissolution under Washington's limited liability company statute or construed more liberally." (Dkt. No. 47 at 8.) On January 21, 2026, Defendants filed a motion for reconsideration (Dkt. No. 48), which the Court denied (Dkt. No. 50). The order denying reconsideration noted the Parties may file renewed motions for summary judgment addressing the Court's concerns set forth in the January 7, 2026 Order. (*Id.* at 3.) In a joint status report filed February 20, 2026, the Parties set out an agreed briefing schedule for renewed cross-motions for summary judgment. (Dkt. No. 51.) The Parties timely filed their motions for partial summary judgment (Dkt. Nos. 52, 55), and the matter is now ripe for review.

## II LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must construe the evidence in favor of the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d

528, 531 (9th Cir. 2000). The moving party bears the initial burden of proof to demonstrate the absence of a genuine dispute of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), and can meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case," *Fairbank*, 212 F.3d at 531. The court's role at summary judgment "is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In the contract interpretation context, "[s]ummary judgment is not proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two or more reasonable but competing meanings. *Go2Net, Inc. v. C I Host, Inc.*, 60 P.3d 1245, 1250 (Wash. Ct. App. 2003) (internal quotations and citation omitted).

## III DISCUSSION

As in their previous motion for partial summary judgment, Plaintiffs ask the Court to construe the word "dissolved" to mean statutory dissolution pursuant to Washington's limited liability company statute, Chapter § 25.15 of Washington's Revised Code. (Dkt. No. 52 at 12–15.) Defendants in turn ask for a broader interpretation of the word "dissolved." They argue the right to terminate "does not turn on whether TLP continues to exist as a Washington entity or whether it made an erroneous filing with the Washington Secretary of State[,]" but instead turns on whether "the TLP business continues to operate under Smith's management and control[.]" (Dkt. No. 55 at 13.)

In Washington, when interpreting a contract, courts follow the objective manifestation theory of contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 267 (Wash. 2005). "The touchstone of contract interpretation is the parties' intent." *Tanner Elec. Co-op. v. Puget Sound Power & Light*, 911 P.2d 1301, 1310 (Wash. 1996). Under this approach, courts

attempt "to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on the unexpressed subjective intent of the parties." *Hearst*, 115 P.3d at 267. The court imputes "an intention corresponding to the reasonable meaning of the words used" and "generally give[s] words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Id.* Washington courts will often turn to the dictionary definition of an undefined term to determine its ordinary meaning. *Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC*, 492 P.3d 843, 850 (Wash. Ct. App. 2021). Courts typically use "standard English language dictionaries." *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990).

Washington also follows the context rule, which "allows a court, when viewing the contract as a whole, to consider extrinsic evidence, such as the circumstances leading to the execution of the contract, the subsequent conduct of the parties and the reasonableness of the parties' respective interpretations. The rule applies even when the disputed provision is unambiguous." *Fedway Marketplace W., LLC v. State*, 336 P.3d 615, 621 (Wash. Ct. App. 2014) (quotations and citations omitted); *see also Pelly v. Panasyuk*, 413 P.3d 619, 629 (Wash. Ct. App. 2018) ("Under the context rule, extrinsic evidence is admissible to ascertain the intent of the parties in entering into a contract and the meaning of the words used in the instrument."). But consideration of "surrounding circumstances and other extrinsic evidence is limited to determin[ing] the meaning of *specific words and terms used* and not to show an intention independent of the instrument or to vary, contradict or modify the written word." *Fedway Marketplace*, 336 P.3d at 621 (quotations and citations omitted).

Contracts which are part of the same transaction, relate to the same subject matter, and are executed together at the same time should be read and construed together as one contract.

*Pelly*, 413 P.3d at 868. Here, the Patent License Agreement and Mutual Use Agreement are part of the same transaction and are both subsidiary to the Settlement Agreement; thus, the Court construes all three agreements together.

When Lawler and Smith entered into the Settlement Agreement, the two completely separated DP and TLP-WA, except for agreeing to share both certain marketing materials and the use of the patent the men co-invented. (*See* Dkt. No. 49 at 6–17.) As to the patent assignment, the Settlement Agreement stated TLP-WA had the option to license the patent, except for certain uses, one of which was "resale (*i.e.*, consistent with the current Third Law exclusive licensing agreement form)." (*Id.* at 11.) As to the marketing materials, the Settlement Agreement allowed each company a "royalty-free, non-exclusive, and non-assignable license to use demo reels or marketing materials[.]" (*Id.* at 12.) These sections were memorialized into the Patent License Agreement and the Mutual Use Agreement respectively. (*See* Dkt. No. 53 at 5–6, 15.)

The Patent License Agreement allows termination in circumstances of dissolution or liquidation, as well as circumstances involving TLP-WA's inability to pay its debts or instances where creditors threatened its ability to continue operating. (*See id.* at 6.) Section 2.03.4 discusses instances where "the management, control, or ownership of Licensee undergoes substantial change or is any manner transferred[.]" (*Id.*) Similarly, the Mutual Use Agreement allows termination in circumstances where TLP-WA sells or disposes of its business assets, or where ownership substantially changes or is transferred. (*Id.* at 16.) The language of each agreement, taken together, suggests that something *more* than just a change in the state of incorporation is necessary to establish dissolution where there has not been any substantial change in assets or operations between TLP-WA and TLP-CA. The sharing of the patent and the

marketing materials between TLP and DP is contingent upon the continued control of Lawler and Smith over their respective business. In fact, the termination provisions found within the Patent License Agreement and Mutual Use Agreement can be summarized as events that result in the absence of control over TLP by Smith (*i.e.*, insolvency, liquidation, bankruptcy, receivership, or substantial change in ownership). That did not occur here.

Furthermore, Black's Law Dictionary defines "dissolution" to include:

> **1.** The act of bringing to an end; termination.
> **2.** The cancellation or abrogation of a contract, with the effect of annulling the contract's binding force and restoring the parties to their original positions. *See rescission*.
> **3.** The termination of a corporation's legal existence by expiration of its charter, by legislative act, by bankruptcy, or by other means; the event immediately preceding the liquidation or winding-up process.

*Dissolution*, BLACK'S LAW DICTIONARY (12th ed. 2024). TLP-WA did not terminate its operations, but instead continued as a California limited liability company. As Smith attested, TLP-WA and TLP-CA have the same member, operate the same business, have the same EIN, have the same physical location, have the same insurer and consistent insurance policies, use the same bank and bank accounts, and continue to work with some of the same clients. (Dkt. No. 41 at 5.) Furthermore, TLP-WA did not engage in either liquidation or winding up of the business.

The Court concludes TLP-WA did not "dissolve" for purposes of the Patent License Agreement or the Mutual Use Agreement and, therefore, both agreements remain enforceable.

## IV CONCLUSION

Accordingly, for the reasons described above, the Court GRANTS Defendants' motion for partial summary judgment (Dkt. No. 55) and DENIES Plaintiffs' motion for partial summary judgment (Dkt. No. 52).

Dated this 26th day of August, 2026.

David G. Estudillo
United States District Judge